In the

# United States Court of Appeals
## For the Seventh Circuit

Nos. 12-3658 & 13-1295

JAYESH KUMAR SHAH,

*Petitioner*,

*v.*

ERIC H. HOLDER, JR., Attorney General of the United States,

*Respondent*.

Petitions for Review of Orders of the
Board of Immigration Appeals

ARGUED OCTOBER 8, 2013 — DECIDED DECEMBER 4, 2013

Before BAUER, POSNER, and EASTERBROOK, *Circuit Judges*.

EASTERBROOK, *Circuit Judge*. Fifteen years after his 1990 conviction for aggravated criminal sexual abuse, Jayesh Shah was ordered removed to India. He did not seek judicial review of that order but did file a motion to reconsider and petition for review of its denial. He contended that he should have been granted a waiver of removal under §212(c) of the Immigration and Nationality Act, 8 U.S.C. §1182(c) (1994 ed.), as it stood before its repeal in 1996. That argument got

him nowhere, because he ignored the principal ground on which the immigration judge and the Board of Immigration Appeals had decided against him: the nature of his crime led officials to reject his application as a matter of discretion, whether or not he remained eligible for §212(c) relief despite the repeal. (Some aliens do remain eligible. See *INS v. St. Cyr*, 533 U.S. 289 (2001).) Asking this court to declare him eligible was pointless, we held, because he had lost on a discretionary ground independent of the 1996 law's effect. *Shah v. Gonzales*, No. 05-3786 (7th Cir. Sept. 26, 2006) (nonprecedential order).

Shah has lived in India since 2007. In 2012 he filed a motion to reopen the proceedings and, after the BIA denied that motion, a motion to reconsider. He relied on *Judulang v. Holder*, 132 S. Ct. 476 (2011), which rejected the Board's conclusion, expressed in *Matter of Blake*, 23 I&N Dec. 722 (2005), that aliens are not eligible for §212(c) relief unless the ground of their removal was comparable to a ground of exclusion in pre-1996 practice. The Board observed, however, that *Judulang* is limited to the question of eligibility, while Shah's request was denied as an exercise of discretion.

The Board also observed that the motion to reopen is untimely. Except in asylum proceedings, an alien has only 90 days to seek reopening. 8 C.F.R. §1003.2(c)(2). Shah waited more than six years. In order to avoid the effect of the motion's untimeliness, he asked the Board to reopen *sua sponte* (that is, on its own motion). The BIA recognized that it had the authority to do this but remarked that Shah's situation did not merit a favorable exercise of discretion—not only because of the nature of his crime but also because Shah is no longer in the United States.

Shah has filed two petitions for judicial review, one from the order declining to reopen the proceedings, and the other from the order declining to reconsider that order. He contends that *Judulang* requires the Board to reopen his proceedings and that the Board erred in giving weight to his 2007 departure from the United States. A major hurdle to the consideration of either contention is the 90-day deadline for motions to reopen. In an effort to get around that time limit, Shah asked the Board to reopen the proceedings *sua sponte*.

It is difficult to understand how action in response to a litigant's motion could occur *sua sponte*. That phrase means action on a tribunal's own initiative. If the tribunal acts in response to a litigant's request, the step is not on its own initiative. Cf. *Calderon v. Thompson*, 523 U.S. 538, 553–54 (1998). An agency's power of self-initiated self-correction does not imply that a party can avoid time limits by asking the tribunal to engage in a sham—and it would be pretense for an agency or court to claim to act *sua sponte* when it is just granting a litigant's motion. A litigant could ask the tribunal to excuse non-compliance with a time limit; that's effectively what Shah did; but such a request is not a proposal that the tribunal act on its own initiative.

Shah does not contend that the BIA is authorized to excuse an alien's noncompliance with the 90-day limit in 8 C.F.R. §1003.2(c)(2). Nor does he contend that, if the Board has such power, it abused its discretion in denying his request. Instead the petitions for judicial review are predicated on the idea that the judiciary can review the Board's decision not to act *sua sponte*. We held otherwise in *Anaya-Aguilar v. Holder*, 683 F.3d 369 (7th Cir. 2012), observing that a court

has no law to apply, because neither a statute nor any regulation requires the Board *ever* to reopen *sua sponte*.

If the Board said something like: "We would have reopened this proceeding, except that the alien wrote an op-ed piece that critiques immigration policy, so we have decided not to help him", that violation of the first amendment could be reviewed under the proviso for pure questions of law in 8 U.S.C. §1252(a)(2)(D). See *Zambrano-Reyes v. Holder*, 725 F.3d 744 (7th Cir. 2013). Shah tries to bring his situation within that proviso, but it does not assist him.

The Board's principal reason for denying Shah's belated application for relief is the nature of his crime (a sex offense against a girl under the age of ten). That crime led an IJ and the Board to conclude in 2005 that, as a matter of administrative discretion, Shah would not receive §212(c) relief even if *St. Cyr* places him in the category of those still eligible for consideration. Since the agency was (and remains) unwilling to grant him that benefit, it did not matter whether he was eligible. And by the time Shah moved to reopen in 2012, he needed *two* favorable exercises of discretion: first to reopen the proceedings, and then to grant §212(c) relief. The Board stated that the nature of his crime justifies an unfavorable decision at each discretionary step.

Shah could have sought judicial review of the Board's 2005 decision, but he did not. He asked us to review only the Board's decision declining to rehear its original order—and, in seeking our review, he did not contest the Board's conclusion that the nature of his crime meant that he would not be allowed to stay in the United States whether or not he was eligible under §212(c). That's why we held in 2006 that the eligibility issue was not properly presented. Now, in 2013,

Shah wants us to direct the Board to reconsider a question that Shah himself bypassed in 2006. Whatever the permissible scope of *sua sponte* reopenings, the Board is entitled to conclude that an alien cannot avoid the consequences of his own litigation strategy by filing years-late requests with a "*sua sponte*" label attached. And because the discretionary question that Shah bypassed in 2006 remains dispositive against him, the two legal issues that he has briefed in 2013 could not support a decision in his favor.

Not that either of those legal contentions is sound. Although *Marin-Rodriguez v. Holder*, 612 F.3d 591 (7th Cir. 2010), holds that the Board has the power to reopen a removal proceeding after an alien has left this nation, it recognizes that the alien's current location is a factor that the Board may consider in considering a request that an order of removal be set aside.

Section 212(c) allowed the agency to provide relief to an alien who had lived in the United States for at least seven years and whose deportation would cause hardship. After an alien has left the United States and adjusted to life in his native country, the hardship of changing countries has occurred. Perhaps a return could curtail ongoing hardship; that's one reason why the Board is allowed to entertain applications by aliens residing in their home countries; but the change of residence alters the balance of equities under §212(c) and similar statutes. The Board therefore did not violate any rule of law in considering Shah's current location when deciding whether to exercise discretion in his favor.

As for *Judulang*: Shah assumes that administrative agencies must apply all new decisions retroactively but does not explain why. Nothing in the statutes or regulations govern-

ing immigration proceedings requires the agency to reopen closed proceedings whenever, years later, the Supreme Court or a court of appeals disagrees with the Board's legal conclusions.

Regulation 1003.2(c)(2) is for immigration proceedings what Fed. R. Civ. P. 60(b)(6), which authorizes federal district courts to reopen final judgments, is for civil litigation. District courts cannot use Rule 60(b)(6) to apply new decisions retroactively to closed civil cases. See, e.g., *Gonzalez v. Crosby*, 545 U.S. 524, 536–38 (2005); *Ackermann v. United States*, 340 U.S. 193 (1950). Immigration proceedings also are civil, and it is hard to see why what is forbidden in other civil litigation should be compulsory in immigration proceedings. Even in criminal prosecutions, full retroactivity is a rare exception to the norm that final judgments survive changes in the law. See, e.g., *Whorton v. Bockting*, 549 U.S. 406 (2007). *Judulang* applies to all immigration cases that were pending on the day of its release, but the Board need not reopen closed cases in order to apply its holding.

The petitions for review are dismissed.